358 P.2d 332

STATE of Arizona, Appellee,

v.

Lewis H. HUDSON, Appellant.

No. 1150.

Supreme Court of Arizona.

Dec. 30, 1960.

John A. McGuire, Yuma, for appellant.

Wade Church, Atty. Gen., Stirley Newell, Asst. Atty. Gen., Bill Helm, Yuma County Atty., Yuma, for appellee.

PHELPS, Justice.

The defendant, Lewis H. Hudson, was informed against and tried for the unlawful killing, on or about August 29, 1957, of one James McFadden. He was convicted of manslaughter and sentenced to serve from seven years and nine months to ten years in the state prison. He now appeals from this judgment.

This is the defendant's second appeal from a judgment on these facts. Our decision reversing the first conviction of second degree murder because of the failure of the trial court to instruct the jury on the effect of voluntary intoxication on the intent of the defendant to commit murder is reported in 85 Ariz. 77, 331 P.2d 1092, 1093. Included therein is the following statement which substantially conforms to the evidence adduced at the second trial: "It appears from the evidence that the defendant left Los Angeles by freight train on August 27, 1957; and the following day, in the train yard at Colton, California, he met James McFadden, hereinafter referred to as the deceased. Thereafter, Chester Brooks and his father, William Brooks, joined the group, and after much drinking as hereinafter related, the group boarded a freight train and arrived in Yuma, Arizona, on the morning of August 29th. That night the group boarded another freight train headed east and the group was apparently congenial until the freight train was ten or fifteen miles out of Yuma. At this point the stories differ. * * *" William Brooks testified that the defendant "jumped" deceased; that he struck him with a bottle, knocking him to his knees; and that defendant then "stomped" him in the face and throat, hit him with his fists and struck him again with a wine bottle, after which he moved no more. Both men were of approximately the same height, weight and age.

In defendant's statement made to the sheriff of Yuma County on September 3, 1957, which was introduced in evidence by the state, the defendant stated that "we were all wined up", and that he and the deceased had a "heck of an argument", that deceased had "got (him) a good lick on the throat", and that he had shown one of the officers a blue spot on his leg. Defendant also stated that the deceased

had struck his head on the floor of the car when he "took him by the foot and slung him over there". The medical testimony showed that deceased probably had died instantly when a skull fracture pushed a section of bone into the brain tissue.

The two Brookses and defendant sat around drinking the remainder of the wine and then, deciding that the deceased must be dead, defendant got the Brookses to help him throw the body over the side of the car because, as he stated, "As drunk as I was I couldn't possibly pick him up". The body was found about fifty-one miles east of Yuma. The defendant was riding in the same car when he was apprehended at Willcox several hours later.

The defendant has submitted numerous assignments of error. We will only consider those which merit our consideration. The defendant contends that his alleged confession was given involuntarily and that it was error to admit it into evidence. We said in State v. Pulliam, 87 Ariz. 216, 349 P.2d 781, 783:

"* * * Under the law in this state the admissibility of a confession depends on whether it is freely and voluntarily made. (Citing cases.) If obtained through force, duress, or promise of immunity, it is inadmissible. Wagner v. State, 43 Ariz. 560, 33 P.2d 602. If it appears to the reasonable satisfaction of the trial court from the preliminary inquiry that the confession was not so obtained, it may admit the confession into evidence. Davis v. State, 41 Ariz. 12, 15 P.2d 242. However, if it appears to the reasonable satisfaction of the trial court that the confession was not freely given it should not at the trial before the jury permit the confession to be introduced into evidence." (Citing cases.)

We further said in that case that:

"* * * Whenever during the course of a criminal trial a confession is offered in evidence the burden is on the prosecution to lay a prima facie foundation for its introduction by preliminary proof showing that it was freely and voluntarily made. Before the confession is received the defendant if he requests it, in the absence of the jury, must be accorded the opportunity to introduce evidence to overcome the prima facie showing."

The court then rules upon its admissibility for submission to the jury. If the court rules that it is admissible he then submits the question to the jury on proper instructions both as to its voluntary character and as to its truth. This is the proper procedure that should ordinarily be followed in dealing with confessions in the trial court. In the instant case, however, the defendant did not ask to be accorded the opportunity to overcome the prosecution's showing. The defendant permitted the confession to go into evidence and then

proceeded in his case to show that the same was involuntary.

The facts and circumstances surrounding the taking of the confession complained of in the present action are as follows: The defendant was arrested on August 30, 1957, in Willcox and returned to Yuma the following day. He was questioned on his return and maintained that he was innocent of the crime. The defendant was, on a number of occasions, questioned after that up and until he made a confession on September 3, 1957. There was testimony that defendant had been advised of his legal rights in making statements. At various questioning periods he was confronted with the men he said did the killing and also some of the victim's family. At the trial there was testimony concerning the circumstances surrounding these questioning periods and also what was said therein. After the confession was made and on September 4, 1957, the defendant was taken before a magistrate where he waived preliminary hearing.

■ We believe that the State in its preliminary proof met the burden necessary to justify the court in ruling that the confession was prima facie voluntary. Though under the usual procedure it would have been better for the trial court to dismiss the jury before hearing the preliminary proof. As above stated, we do not believe that under the circumstances of this case the trial court abused its discretion in admitting the written confession into evidence.

The question of whether the confession was voluntarily made was submitted by the trial court to the jury on an instruction which would ordinarily be adequate. However we are of the view that under the circumstances of this particular case where defendant was questioned many times before making his confession, and before being taken before a magistrate, his requested instruction No. 6 should have been given admonishing the jury to exercise caution in considering whether the confesssion was voluntarily given.

■ It is not a violation of the defendant's constitutional rights to admit it when the confession was made after his arrest and before being taken before a magistrate. State v. Jordan, 83 Ariz. 248, 320 P.2d 446, certiorari denied 357 U.S. 922, 78 S.Ct. 1364, 2 L.Ed.2d 1367, rehearing denied 358 U.S. 859, 79 S.Ct. 17, 3 L.Ed.2d 93; Hightower v. State of Arizona, 62 Ariz. 351, 158 P.2d 156,

"We do not want it understood from anything said in this decision that we * * * condone the peace officer's failure to take defendant, without unnecessary delay, before the magistrate upon the day of his arrest. However, we hold such delay does not ipso facto make the statements inadmissible. To justify an exclusion, coercion or involuntariness must first be shown. Nevertheless the delay is a factor to be considered in determining such a

question." State v. Jordan, supra [83 Ariz. 248, 320 P.2d 451].

Defendant contends that the court erred in refusing to strike the testimony of one Myrtle Stengel, sister of the victim, concerning her conversation with the defendant in the sheriff's office. This conversation took place a day or two before the defendant made his confession in the presence of her husband, her brother, and a niece as well as the sheriff and a deputy sheriff. The substance of her testimony is as follows:

"Q. Go ahead and just relate as best you can what was said by each of you including the defendant. A. The first thing I said to him, the defendant, you murdered my brother.

\* \* \* \* \* \*

"Q. What was said after that then? A. He said 'I did not kill your brother', I said, if you didn't, who did? You are the one that is here. The monkey is on your back. He said, 'Old man Brooks killed your son. (Sic) I helped throw him off the train.' What did you do?, I said. He said 'I quarreled and fought with your brother'. I said, 'My brother is an easy going person. And he was crippled. Did he fight with you? He squirmed and looked at the floor. My brother, I said, what did you fight him with? He said 'My fists'. I said, your fists? His fists were as clear as mine. What were you doing with your knife? He said, 'I was trimming corns on my toes'. I said, Let me see your foot. And I said, It's as clear as mine. He said, 'That is what I was doing, lady. I was trimming corns on my foot.' I said, I don't know who you are or where you are from. I said, 'You are somebody's son. I feel sorry for your mother, not you. You have committed this crime. I hope that you will pay for it. That is about all I said to him."

Defendant objected to this testimony and moved that same be stricken on the grounds of it being prejudicial and hearsay. He now assigns that this testimony was incompetent and was an admission of an involuntary statement.

■ The above testimony consisted wholly of accusations against the defendant and his denials thereof. They were neither admissions of fact nor admissions against interest. The county attorney exercised poor judgment in calling this woman as a witness as she obtained no admission whatsoever from the defendant. The trial court erred in not striking such testimony upon motion of the defendant as the testimony had no probative value whatever. The accusations were inflammatory in character. Whether they did or did not inflame the minds of the jury can be answered only by the members of the panel. In any event we are positive the testimony was wholly

inadmissible and could have had no other effect upon the decision of the jury than to create a prejudice against defendant. He was entitled to have his case go to the jury on evidence legitimately calculated to prove or to disprove a material issue in the case. Despite the importance of reaching a finality in this case, we hold that the admission of the above evidence constitutes reversible error.

■ The defendant contends that the trial court erred in denying his motion for a mistrial based upon the ground that the county attorney elicited from the defendant that he had been convicted in the first trial. The general rule is that the State may inquire of the defendant when he is a witness if he was previously convicted of a felony. If the answer is in the affirmative he may be asked the number of such convictions, the names and nature of the crimes, and the places where they were committed, and if the answers are correctly given the inquiry must end there. State v. Polan, 78 Ariz. 253, 278 P.2d 432; State v. Sorrell, 85 Ariz. 173, 333 P.2d 1081.

■ In the present action the defendant answered in the affirmative upon being asked whether he had ever been convicted of a felony. The State then proceeded to find out the number of such convictions. During such inquiry the following occurred which the defendant objects to as error:

"Q. Since your conviction in Great Falls, Montana, have you been convicted of a felony? A. Yes, sir.

"Q. When was that? A. Here.

"Q. And when? My question was when? A. 1957."

The defendant then moved "that the jury be instructed to disregard the last question and answer as having no probative value in this case." This motion was denied. The county attorney stated in response to a question by the court that he had no information that defendant had been convicted of any other crimes (that is, other than the previous conviction in this case). Therefore, the inference is inescapable that he intended to bring to the attention of the jury his previous conviction on the identical charge then before the jury. This was error.

■ It was not error for the court to permit either Sheriff Newman or Judge Nabours to testify on rebuttal concerning the voluntary character of defendant's confession. Their rebuttal was necessary not only to refute defendant's testimony that it was not voluntary, but also to refute culpable conduct charged to them by defendant in taking the confession.

■ The defendant contends that the trial court erred in permitting the county attorney when cross-examining the defendant to read from a document not then ad-

mitted into evidence. The document was an alleged statement made by the Brookses in the presence of the defendant and others, including the then County Attorney Nabours. It also contained a voluntary statement by defendant made at the time that the Brookses had stated it "exactly as it happened." This document was used in an effort to refresh the defendant's recollection. The county attorney was laying a foundation for impeachment. He followed it up by showing that such a conversation did take place through the testimony of Nabours.

Even though the document was not offered into evidence at the close of the cross-examination of the defendant, it was offered later when the witness Nabours testified as to its contents. At this time the trial court denied its admission. The court should have admitted this document into evidence and it will be considered as if it had been admitted. This being so the error assigned is without merit.

We find no merit in the claim that the sentence was excessive. It was well within the limitation prescribed by the Legislature for the offense charged.

For the reasons above stated, the case is reversed and remanded for a new trial.

STRUCKMEYER, C. J., and BERNSTEIN, UDALL and JENNINGS, JJ., concur.