220 P.3d 249

**STATE of Arizona, Appellee,**

v.

**Reynel Amador LUCERO, Jr., Appellant.**

**No. 1 CA–CR 08–0616.**

Court of Appeals of Arizona, Division 1, Department E.

Dec. 10, 2009.

Terry Goddard, Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section, Joseph T. Maziarz, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Theresa M. Armendarez, Phoenix, Attorney for Appellant.

## OPINION

KESSLER, Judge.

¶ 1 Reynel Amador Lucero Jr. ("Lucero") appeals from his conviction of two counts of sexual misconduct with a minor in violation of Arizona Revised Statutes ("A.R.S.") section 13–1405 (Supp.2008). We hold that the superior court did not err in admitting Lucero's confession to a military investigator, that the investigator was a law enforcement official for voluntariness analysis and that Lucero did not invite an erroneous response to a jury question by merely acquiescing to the court's response. However, we affirm Lucero's convictions and sentences because he suffered no prejudice.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 A grand jury indicted Lucero for two counts of sexual conduct with a minor. The State's evidence included statements Lucero made to Special Agent Todd V., a sergeant in the United States Army and member of the Army's Criminal Investigations Division ("CID").

¶ 3 The superior court conducted a voluntariness hearing and held that Lucero freely and voluntarily made his incriminating statements to V. V. testified that he first advised Lucero of his *Miranda*[1] rights, that Lucero voluntarily waived those rights, and that V. conducted the subsequent interview by asking open ended questions with no threats or promises of leniency in exchange for cooperation. Lucero testified that he had been ordered to participate in the interview by his

---

1. *See Miranda v. Arizona, 384 U.S. 436, 444, 86* S.Ct. 1602, 16 L.Ed.2d 694 (1966).

commanding officer and that he had affirmatively answered V.'s leading questions only because V. promised Lucero that he would not go to prison, that he would be able to remain in the military, and that his failure to cooperate would result in the Army making the investigation "ugly". The superior court found V. more credible, adopted his version of the disputed facts, and ruled that the confession was voluntary.

¶ 4 The superior court permitted the State to present evidence of Lucero's statements to V. at trial. V. testified that he interviewed Lucero in response to a request for assistance by the Phoenix Police Department. He also testified that during the interview, Lucero confessed committing sexual acts with a minor, J, by going into her room at night, removing her undergarment, and rubbing his penis between her buttocks. Finally, V. testified that Lucero confessed placing his penis in J's mouth on another occasion. The State also introduced into evidence a tape of a confrontation call made by Lucero's wife to Lucero during which Lucero admitted committing the same acts of sexual misconduct with J. At trial, V. and Lucero both testified consistently with their voluntariness hearing testimony regarding whether V. induced Lucero's confession with any threats or promises. The superior court instructed the jury that it should not consider any statement Lucero made to a law enforcement officer unless it found that the statement was freely and voluntarily made.

¶ 5 During deliberation, the jury asked the court whether V. was a law enforcement officer. The superior court consulted counsel for both sides. The State agreed with the court's proposed answer that whether V. was a law enforcement officer was a question of fact for the jury to decide on the basis of the evidence. Lucero's counsel stated that he was unclear as to the law whether a military criminal investigator was a law enforcement officer, but he had no objection to the proposed response and he assumed it was correct. The court instructed the jury to determine whether V. was a law enforcement officer as a fact question.

¶ 6 The jury convicted Lucero of both counts and the superior court sentenced him

to consecutive sentences of twenty years on the first count and life imprisonment on the second. Lucero filed a timely notice of appeal. This Court has jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. § 12–120.21(A)(1)(2003) and § 13–4033(A)(1)(Supp.2008).

## ANALYSIS

¶ 7 Lucero contends that the superior court erred in: (1) admitting evidence of his confession to V. and (2) instructing the jury that it should determine, as a factual matter, whether V. was a law enforcement officer for constitutional purposes.

### I. The Confession Was Admissible

¶ 8 We review the superior court's determination of the admissibility of confessions for clear and manifest error. *State v. Eastlack*, 180 Ariz. 243, 251, 883 P.2d 999, 1007 (1994); *State v. Amaya–Ruiz*, 166 Ariz. 152, 164, 800 P.2d 1260, 1272 (1990). We consider the evidence in the light most favorable to sustaining the holding of the superior court. *State v. Garcia Garcia*, 169 Ariz. 530, 531, 821 P.2d 191, 192 (App.1991). This Court defers to the superior court's determination of witness credibility. *State v. Gonzalez–Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996). We review *de novo* whether the superior court invoked the correct legal standard. *Id.*

¶ 9 A confession is admissible only if the State proves by a preponderance of the evidence that the confession was freely and voluntarily made. *State v. Smith*, 193 Ariz. 452, 457, ¶ 14, 974 P.2d 431, 436 (1999) (citing *State v. Scott*, 177 Ariz. 131, 136, 865 P.2d 792, 797 (1993)). Courts evaluate whether a confession is voluntary based on the totality of the circumstances. *State v. Stanley*, 167 Ariz. 519, 524, 809 P.2d 944, 949 (1991). "Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Promises of benefits or leniency constitute impermissible coercion and render an inculpatory state-

ment involuntary. *State v. Lopez*, 174 Ariz. 131, 138, 847 P.2d 1078, 1085 (1992).

■ ¶ 10 The superior court properly admitted the confession after weighing conflicting evidence and making a credibility determination. At the voluntariness hearing, Lucero and the State presented conflicting evidence whether Lucero's incriminating statements were the result of threats, coercion, or promises of leniency. The superior court assessed the credibility of the witnesses, weighed the conflicting evidence and determined that V.'s testimony was credible. We find no clear error because credibility is an issue left to the trier of fact and there is evidence supporting the court's findings that Lucero's incriminating statements to V. were procured without promises or threats and that V. did nothing to coerce Lucero to make those statements. *See Gonzalez–Gutierrez*, 187 Ariz. at 118, 927 P.2d at 778. We therefore affirm the superior court's admission of Lucero's confession to V.

## II. As a Matter of Law, V. was a Law Enforcement Officer

■ ¶ 11 Lucero contends that his conviction should be overturned because the superior court committed fundamental error by instructing the jury to determine as a factual matter whether V. was a law enforcement officer for constitutional purposes before it considered whether the confession to V. was made freely and voluntarily. The State argues that this Court should not engage in a fundamental error analysis because Lucero invited the error. We hold that Lucero's express decision not to object to the court's proposed response to the jury question does not rise to invited error. Although the court's answer was erroneous, Lucero expressly waived any objection to it at trial and is not entitled to relief under the fundamental error standard because he suffered no prejudice. Therefore, we affirm the conviction and sentence under the fundamental error standard.

■ ¶ 12 Before we may rule on an error under either the invited error standard or the fundamental error standard, we must first determine that there has been error. *State v. Henderson*, 210 Ariz. 561, 568, ¶ 23,

115 P.3d 601, 608 (2005) (fundamental error); *State v. Armstrong*, 208 Ariz. 345, 357 n. 7, ¶ 59, 93 P.3d 1061, 1073 n. 7 (2004) (invited error). If error exists we must determine whether it is invited error because if the error is invited, Lucero has no available remedy. *State v. Logan*, 200 Ariz. 564, 565–66, ¶ 9, 30 P.3d 631, 632–33 (2001). If the error is not invited and Lucero did not object to the response, he forfeited the right to appellate relief except for fundamental error review. *Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607. To prevail under fundamental error analysis, Lucero must show that the error is so substantial that it goes to the foundation of the case and it caused him prejudice. *Id.* at 567–68, ¶ 20, 115 P.3d at 607–08.

¶ 13 Lucero argues that the superior court erred in informing the jury that it should determine, as a question of fact, whether V. is a law enforcement officer for constitutional purposes. We agree. Federal courts reviewing the actions of CID special agents consistently treat them as subject to the constitutional safeguards ordinarily applicable to actions of law enforcement officials. *See, e.g., Brosius v. Warden, U.S. Penitentiary, Lewisburg, PA*, 278 F.3d 239, 246 (3d Cir.2002) (reviewing conduct of CID special agent for compliance with constitutional restrictions on custodial interrogations); *U.S. v. Weston*, 66 M.J. 544, 549 (N–M.Ct.Crim. App.2008) (reviewing search conducted by CID special agents for compliance with Fourth Amendment) *aff'd* 67 M.J. 390 (U.S. Armed Forces 2009); *U.S. v. Ford*, 51 M.J. 445, 450–52 (U.S. Armed Forces 1999) (reviewing whether a confession made to a CID special agent was voluntary).

■ ¶ 14 Further, holding a military criminal investigator to be covered by the requirements of the Due Process Clause comports with the policy behind prohibiting state procurement of involuntary confessions. The application of the exclusionary rule to involuntary confessions rests on the principle that no "state actor [may] deprive[ ] a criminal defendant of due process of law." *Connelly*, 479 U.S. at 164, 107 S.Ct. 515. A confession obtained through oppressive or

overreaching conduct by law enforcement officials violates a defendant's right to the due process of law regardless of whether the investigator is a member of the United States military or an employee of the state. *See Brown v. Mississippi,* 297 U.S. 278, 285, 56 S.Ct. 461, 80 L.Ed. 682 (1936) (quoting *Hebert v. Louisiana,* 272 U.S. 312, 316, 47 S.Ct. 103, 71 L.Ed. 270 (1926)) ("The due process clause requires 'that state action, whether through one agency or another, shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.' "). Regardless of agency designations or the status of an official interviewing a defendant as civilian or military, the Due Process Clause forbids admission of a confession involuntarily obtained by a government authority.

¶ 15 Because V. was a law enforcement officer interrogating Lucero at the request of the police, the superior court should have instructed the jury to consider the confession he obtained only if the jury found that the confession was freely and voluntarily given. *State v. Schackart,* 175 Ariz. 494, 503, 858 P.2d 639, 648 (1993) ("Once the trial judge preliminarily determines that a confession is admissible, he or she must, if requested by the defense, instruct the jury to disregard the confession unless it is found to be voluntary."); *State v. Hudson,* 89 Ariz. 103, 106–07, 358 P.2d 332, 334 (1960). By instructing the jury that it could conclude that V. was not a law enforcement officer, the superior court erroneously allowed the jury to consider the confession made to V. even if the jury concluded that the confession was not freely and voluntarily made. *See State v. Fulminante,* 161 Ariz. 237, 244, 778 P.2d 602, 609 (1988)("[T]he trial court instructed the jury on the issue of voluntariness, but failed to instruct the jury on whether Anthony Sarivola was a law enforcement officer and it is not clear whether the jury understood Sarivola [a paid FBI informant] to be a 'law enforcement officer'. We believe the trial court erred in not instructing the jury on who would be a 'law enforcement officer' when considering the voluntariness of the confession made.")

## III. The Error Is Subject to Fundamental Error Analysis

¶ 16 The State argues that Lucero invited the error and may not receive even fundamental error review on appeal. We hold Lucero's conduct did not amount to invited error. Rather, Lucero waived any objection to the proposed response to the jury question, subjecting the response to fundamental error analysis.

### A. The Invited Error Doctrine Does Not Apply

¶ 17 In *Logan,* our supreme court restated and to some degree clarified the principle of invited error. 200 Ariz. at 565, ¶ 8, 30 P.3d at 632. As the court indicated, invited error precludes a party who causes or initiates an error from profiting from the error on appeal. *Id.* If the error is invited, the offending party has no recourse on appeal even under the exacting standard of fundamental error. *Id.* at 565, ¶ 9, 30 P.3d at 632. As the court explained, the policy behind allowing the invited error doctrine to prevent the vindication of fundamental procedural rights is the need to police strategic gamesmanship by parties who would inject error into a proceeding in the hope of profiting from the error on appeal. *Id.* at 565–66, ¶¶ 8, 11, 30 P.3d at 632–33. Given that purpose, courts must look "to the source of the error, which must be the party urging the error" to determine if invited error occurred. *Id.* at 566, ¶ 11, 30 P.3d at 633.

¶ 18 Because the invited error doctrine prevents the court from correcting error that might go to the foundation of a fair trial and causes prejudice to the defendant, "extreme caution must be exercised in permitting" an application of the doctrine unless the facts clearly show that the error was actually invited by the appellant. *Compare State v. Smith,* 101 Ariz. 407, 409, 420 P.2d 278, 280 (1966) (requiring extreme caution when the error involves a constitutional right) *with Logan,* 200 Ariz. at 565, ¶ 8, 30 P.3d at 632 (holding that the usual rule of invited error should apply when the defendant requests the erroneous jury instruction).

¶ 19 While one commentator has stated that "Arizona courts have not articulated an explicit test" to determine what conduct invites an error, "case law indicates that the doctrine requires an affirmative invitation of the error by the party now raising the challenge rather than passive acquiescence to it." Bennett Evan Cooper et. al., 8 ARIZONA PRACTICE § 29:7 (2008–2009 ed.). Our review of every post-*Logan* published Arizona appellate decision substantively discussing invited error confirms that distinction between affirmative invitation of error and passive acquiescence.[2]

 ¶ 20 Thus, a party invites an erroneous jury instruction by expressly requesting it. *State v. Roque*, 213 Ariz. 193, 225, ¶ 137, 141 P.3d 368, 400 (2006); *State v. Roseberry*, 210 Ariz. 360, 369, ¶ 53, 111 P.3d 402, 411 (2005); *State v. Anderson*, 210 Ariz. 327, 336 n. 5, 337, ¶¶ 18, 20, 111 P.3d 369, 378 n. 5, 379 (2005); *State v. Edmisten*, 220 Ariz. 517, 523, ¶ 19, 207 P.3d 770, 776 (App.2009). Similarly, expressly requesting the superior court not to give a lesser-included offense instruction amounts to invited error, precluding the defendant from arguing on appeal that the instruction should have been given. *State v. Fish*, 222 Ariz. 109, 132, ¶¶ 79–81, 213 P.3d 258, 281 (App.2009). A party invites an improper prosecutorial comment by first making the exact same comment. *Roque*, 213 Ariz. at 232, app. ¶ 7, 141 P.3d at 407, app. ¶ 7. A party also invites prejudicial testimony by being the first party to elicit the testimony. *Anderson*, 210 Ariz. at 340, ¶ 44, 111 P.3d at 382; *State v. Moody*, 208 Ariz. 424, 453, ¶ 111, 94 P.3d 1119, 1148 (2004); *State v. Leyvas*, 221 Ariz. 181, 188–89, ¶¶ 25–26, 211 P.3d 1165, 1172–73 (App. 2009). Similarly, invited error occurs when a party fails to request an administrative hearing after an agency determination and instead files a complaint for declaratory relief and then complains on appeal that the party could not present evidence at a hearing. *City of Chandler v. Arizona Dep't of Transportation*, 216 Ariz. 435, 440–41, ¶ 20, 167 P.3d 122, 127–28 (App.2007). Our supreme

court has also held that a party's refusal to stipulate to a special verdict amounted to invited error precluding the party from arguing on appeal that the verdict should have been given. *State v. Ellison*, 213 Ariz. 116, 140, ¶ 106, 140 P.3d 899, 923 (2006). Invited error also occurs when a party independently requests an erroneous instruction and then argues on appeal that the instruction was error even though the other party also independently asked for the same instruction. *State v. Yegan*, 1 CA–CR 08–0455, slip op. at 14–18, 223 Ariz. 213, 218–20 ¶¶ 20–24, 221 P.3d 1027, 1032–34, 2009 WL 4638858 (Ariz. App., Dec. 8, 2009).

¶ 21 In each of the above cases, the crucial fact was that the party took independent affirmative unequivocal action to initiate the error and did not merely fail to object to the error or merely acquiesce in it.

 ¶ 22 By contrast, invited error does not occur when the defendant stipulates to the error unless it can be shown from the record that the defendant proposed the stipulation and was thus the source of the error. *State v. Thues*, 203 Ariz. 339, 340 n. 2, ¶ 4, 54 P.3d 368, 369 n. 2 (App.2002) (court would not apply invited error doctrine when it could not tell which party proposed the stipulation). *But cf. State v. Escobedo*, 222 Ariz. 252, 266, ¶¶ 49–50, 213 P.3d 689, 703 (App. 2009) (when twelve-person jury is required by law, defendant invites erroneous jury size by submitting a joint pretrial statement indicating that an eight-person jury is proper). *Cf. In re MH 2007–001275*, 219 Ariz. 216, 219, ¶ 12, 196 P.3d 819, 822 (App.2008) (stipulation by counsel to submit evidence on record does not preclude review of whether party knowingly, intelligently and voluntarily waived testimonial hearing). Even if a party accepts a superior court ruling "with uncharacteristic acquiescence and meekness", he does not invite the error. *Gaston v. Hunter*, 121 Ariz. 33, 41, 588 P.2d 326, 334 (App.1978).

¶ 23 We have found only one case post-*Logan* in which the court impliedly expanded

**2.** Our specially concurring colleague characterizes our holding on invited error as premising invited error on a waiver rather than an estoppel theory. We are expressly holding that waiver is subject to fundamental error analysis whereas invited error requires an affirmative, independent request by a party. Thus, the doctrinal basis for invited error does not sound in waiver.

invited error to include affirmative acquiescence in an error proposed by the trial court.[3] In *State v. Pandeli*, 215 Ariz. 514, 528, ¶¶ 48–50, 161 P.3d 557, 571 (2007), the defendant's counsel responded to the judge's question whether adverse testimony about other acts of his client was admissible, stating that he thought it was admissible and proffering reasons to the court supporting his conclusion. The court held counsel invited error precluding him from contending on appeal that the testimony was erroneously admitted.

¶ 24 We are bound by decisions of our supreme court. *State v. Smyers*, 207 Ariz. 314, 318 n. 4, ¶ 15, 86 P.3d 370, 374 n. 4 (2004). However, we think that the brief comment in *Pandeli* can be harmonized with the more general rule set forth in *Logan* and its progeny that invited error should be restricted to affirmative, independent action of a party requesting error rather than mild acquiescence in that error. First, this Court has characterized *Pandeli* as involving not only an agreement with error proposed by another party or a court, but involving the appellant actively arguing for the error by giving legal reasons therefore in the trial court. *Escobedo*, 222 Ariz. at 266, ¶ 50, 213 P.3d at 703 (summarizing *Pandeli* as involving a failure to object to proposed testimony and affirmatively arguing that it was admissible).

¶ 25 Second, in a case decided after *Pandeli*, our supreme court implied that it will not apply invited error when there was mere acquiescence in the error. In *State v. Smith*, the trial court asked defense counsel whether the defendant's prior foreign felony convictions met Arizona statutory requirements for sentencing enhancement purposes. 219 Ariz. 132, 133, ¶ 4, 194 P.3d 399, 400 (2008). Counsel told the court they did and he did not dispute that they qualified as prior felonies under Arizona law. *Id.* Before the supreme court, the State argued for the first time that such statements amounted to invited error,

precluding the defendant from contesting whether the felonies qualified for enhancement purposes. *Id.* at 136 n. 8, ¶ 22, 194 P.3d at 403 n. 8. The supreme court stated it would not address this new argument, but also cited to *Logan*. *Id.* (citing 200 Ariz. at 565–66, ¶ 9, 30 P.3d at 632–33, which held that a court will not find reversible error when the party complaining of it invited the error and referred to cases holding party invited instructional error when court gave instruction requested by that party).[4]

¶ 26 Third, there is an important policy reason to not expand invited error beyond independent, affirmative action requesting the error. The policy underlying invited error is to preclude appellate review of an issue when a party attempts to inject the error into the record for strategic purposes and not merely when a party acquiesces in an error. Expanding the invited error doctrine to parties acquiescing in an error but who are not the source of the error would not serve the underlying purpose of the doctrine.

¶ 27 Thus, as our supreme court noted in Logan, the policy behind allowing the invited error doctrine is to police strategic gamesmanship by parties who would inject error into a proceeding in the hope of profiting from the error on appeal:

"A party by clever and ingenious argument might in the hurry of a trial persuade a court to give an instruction which, upon a critical examination, would be found not good in point of law.... [If an erroneous instruction] is given, the party urging it may not be heard in this court to decry a result fashioned by his own handiwork. The toleration of such a procedure would tend often, perhaps, to encourage parties to strive in an endeavor to catch the court, and thus predicate a foundation for reversible error."

\* \* \*

The purpose of the doctrine is to prevent a party from 'inject[ing] error in the record

**3.** *See, however, State v. Rubio*, 219 Ariz. 177, 180, ¶ 8, 195 P.3d 214, 217 (App.2008) (failure of party to use available peremptory challenge to strike juror party claimed should be stricken for cause, while technically not invited error, but waiver, waives right to raise issue on appeal).

**4.** We recognize that it is possible the court in *Smith* was refusing to address the invited error doctrine merely because the State had not raised the doctrine in the court of appeals.

and then profit[ing] from it on appeal.' ... *We achieve that purpose by looking to the source of the error, which must be the party urging the error* ....

200 Ariz. at 565–66, ¶¶ 8, 11, 30 P.3d at 632–33 (citation omitted) (emphasis added).

¶ 28 This policy to limit the invited error doctrine to persons intending to "catch the court" by affirmatively being the source of the proposed error also appears to be the general rule in other jurisdictions, including those cited by our concurring colleague. *E.g., State v. Kammeyer,* 226 Or.App. 210, 203 P.3d 274, 276 (2009) (invited error doctrine is aimed at preventing parties who make an intentional or strategic trial choice from later blaming the trial court for the error); *State v. Momah,* 167 Wash.2d 140, 217 P.3d 321, 328 (2009) (invited error doctrine is to prevent parties from misleading a court and then receiving a windfall on appeal).

¶ 29 As one commentator has noted, an expanded view of invited error would cast the net too wide, penalizing both parties who intend to build error into the record for strategic *purpose along with those who merely are unwitting.* Sean Arthurs, *A Foolish Consistency: How Refusing to Review Ford v. Garcia's Invited Error Demonstrates the Eleventh Circuit's Prioritization of Procedure Over Justice,* 72 U. Cin. L.Rev. 1707, 1721–22 (2004) ("The primary purpose of the invited error doctrine is to deter defendants from making 'an affirmative, apparently strategic decision at trial and then complain[ing] on appeal that the result of that decision constitutes reversible error.' The widespread acceptance of the plain error exception to the preservation of error requirement has prompted some legal charlatans to devise trial strategies that ensure the presence of a plain error at the trial court level.... [T]he invited error doctrine assumes a complete familiarity with the relevant law and penalizes the ill-prepared or unwitting lawyer just as harshly as the malicious lawyer.... The complete prohibition on reviewing invited error disregards the dangers of establishing a flawed precedent and ignores any role played by the opposing counsel or the judge in contributing to the error.") (quoting *United States v. Jernigan,* 341 F.3d 1273, 1290 (11th Cir.2003)).

¶ 30 It appears to us that appellate courts should not be delving into the intent of a trial attorney when he or she requests error to determine whether it amounted to invited error. On the other hand, expanding the invited error doctrine to apply to mere acquiescence in an error, rather than looking at the source of the error, is too harsh a punishment and may unduly jeopardize a party's due process rights to a fair trial. The appropriate balance is set forth in *Logan*—to look to the source of the error.

¶ 31 Accordingly, we hold that if the party complaining on appeal affirmatively and independently initiated the error, he should be barred from raising the error on appeal. If, on the other hand, he merely acquiesced in the error proposed by another, the appropriate sanction should be to limit appellate review to fundamental error.[5]

¶ 32 Applying *Logan's* source of the error test in light of the purpose of the invited error doctrine to avoid gamesmanship, the question is whether Lucero's counsel's conduct was the source of the error. This requires a review of the brief discussion of the response to the jury question. As the record reflects, Lucero neither initiated the erroneous response that the jury was to determine if V was a law enforcement officer nor argued for it, but simply stated that he was not sure of the law in the area and the court's proposal to leave the question to the jury seemed correct:

THE COURT: Hang on. We have got another question. All right. We're back on the record. The second question is: Is [V] considered a "law enforcement officer?"

Any response to that? Mr. Cohen [representing the State].

MR COHEN: I would say "yes."

THE COURT: Mr. McBee [defense counsel].

5. We do not hold, as suggested by the concurrence, that the invited error doctrine only applies if the appellant is the sole source of the error. *Infra,* ¶ 42.

MR. MCBEE: I would agree, or I guess it could be phrased he was acting in a law enforcement capacity, because I don't know exactly.

MR. COHEN: But, he was military police, so—

MR. MCBEE: Yeah, so.

THE COURT: ... I think that—I guess if you both agree—that I can answer that in the affirmative. I think that's the answer too. *I'm just a little concerned that maybe that's—is that a factual issue that they have to determine, whether or not he is a law enforcement officer?*

MR. MCBEE: *Yeah. I mean, I'm just not real familiar with military CIDs. It was clear he was acting in a law enforcement capacity at the very least.*

MR. COHEN: And he testified he is in the military police.

THE COURT: I think it was clear from the facts he was acting as a law enforcement officer. He was kind of, you know, like a detective questioning a suspect. He did read him the Miranda rights. I think that, you know, I'm a little uncomfortable answering in the affirmative, but if both counsel agree, I will answer.

MR. COHEN: That, or I guess we can just—the jury heard the testimony, and they can make that determination themselves. I guess it could be a factual issue.

MR. MCBEE: *Yeah. I think because the fact he is in the military kind of clouds it. You know, I know what the Phoenix Police Department does, but I don't know what he does on a regular basis.*

THE COURT: ... My answer is: You have heard the facts of the case. It is up to you to make this determination.... Any objection to that?

MR. COHEN: No, your Honor.

MR. MCBEE: *No, that sounds right.*

(Emphasis added).

¶ 33 The record does not show that Lucero's counsel was the source of any error by affirmatively asking the court to instruct the jury that it was a fact question whether V was a law enforcement officer. Nor does the record show that Lucero's counsel affirmatively argued for the response to try and trick the court into error. Rather, the court raised the fact issue response after both parties suggested the jury should be told V was a law enforcement officer and it was only when the court suggested it might be a fact issue that the State agreed and Lucero's counsel stated he was not sure of the law in the area but the response sounded correct. This is not the stuff of which invited error is made. Rather, fundamental error analysis should be applied on the ground that the conduct of Lucero's counsel was only a waiver of an objection.

¶ 34 Our esteemed specially concurring colleague argues for a more expansive reading of the invited error doctrine to include any positive acquiescence of error. We see the difference between our respective positions as trying to draw a line between waiver and invited error when there is some affirmative conduct by a party in the trial court, but the party does not argue for the court to take certain action and then appeals when the court agrees to take the requested action. Thus, in this case, Lucero's counsel acquiesced in the response but neither proposed it nor argued for it. We see that as different from an attempt to strategically induce an error in the trial proceedings by independently proposing it or arguing for the error. We conclude the sanction of limiting review to fundamental error is a sufficient deterrent to a party positively stating he does not object to a course of action, but not proposing the course of action or arguing for it. Such limited review is also sufficient to ensure the rights of the defendant are protected without undue strain on the judicial system.

¶ 35 We also think the cases from other jurisdictions on which the special concurrence relies involved much more independent and affirmative proposal and support of the error than Lucero's counsel's statement acquiescing in the court's suggestion.[6] Thus, in

---

6. The special concurrence also cites to *State v. Islas,* 132 Ariz. 590, 647 P.2d 1188 (App.1982). We do not find that case helpful. While the court in *Islas* cites to another jurisdiction for the principle that one who contributes to an error cannot complain of it, 132 Ariz. at 592, 647 P.2d

*Momah,* the issue at trial was whether certain potential jurors should be voir dired in chambers because of the amount of publicity the case had generated. 217 P.3d at 324, ¶ 3. Momah not only agreed to such questioning, but argued affirmatively for its expansion, to which the State and court agreed. *Id.* at ¶¶ 3–4. Momah's counsel then actively participated in such voir dire *Id.* at ¶ 4. On appeal of his conviction, Momah argued that the private voir dire· violated his right to a public trial. The court found that while this was not a classic case of invited error, Momah had not objected to the procedure, made a deliberate choice to conduct the voir dire in private, argued for its expansion and affirmatively participated in it without ever mentioning that it might violate his rights to a public trial. *Id.* at 328–29, ¶¶ 28–29; *see also State v. Coleman,* 114 Conn.App. 722, 971 A.2d 46, 52–53 (2009) (defendant invited erroneous jury instruction on possession when, in response to the jury's questions, he affirmatively proposed to the court that it simply reread the instruction already given and then argued on appeal that the instruction was erroneous); *People v. Sanchez,* 388 Ill.App.3d 467, 328 Ill.Dec. 400, 904 N.E.2d 162, 166, 169–70 (2009) (invited error found when jury asked for clarification of terms, defense counsel suggested jury be instructed that it had received all instructions and should keep deliberating, and the State and the court agreed).

¶ 36 In *Kammeyer,* the defendant pled guilty to two counts of burglary and to pay restitution to be determined. 203 P.3d at 275. The State then sought restitution based in part on other burglary charges which had been dismissed as part of the plea agreement. The defendant objected, saying he had not pled guilty to the other two counts and they had been dismissed. *Id.* When the State argued that if the defendant did not

want to accept the restitution, he should withdraw the plea agreement, the defendant told the court the plea was a good agreement, he did not want to take back the plea, he "just wanted to say what was on [his] mind," he was "okay" that restitution would be on all four counts and he had "no problem" with paying restitution on all four counts. *Id.* On appeal, the court found that this precluded review of the restitution order as it related to the dismissed counts because defendant was "actively instrumental in causing the error," had not objected to restitution on all four counts, and did not want to take back his plea. *Id.* at 276.

¶ 37 In contrast to the facts in this case, in *State v. Clay,* 291 Mont. 147, 967 P.2d 370 (1998), we have only a very limited record. In *Clay,* the court had received a note from the jury about a possible deadlock. *Id.* at 371–72, ¶ 7. The court met with the attorneys and all we know is that defense counsel "agreed" with the court's suggestion that the jury be called in and the foreperson be asked whether there was any possibility the jury could reach a verdict. *Id.* at 372, ¶ 7. The court found that his active acquiescence and participation in the procedure waived appellate review. *Id.* at 374–75, ¶ 24. We simply do not know whether defense counsel argued for the procedure, stated any hesitation to it or actively promoted it. Even if it were mere acquiescence, that holding conflicts with *Logan* by not looking at the source of the error and the underlying limited policy of the invited error doctrine.

**B. There Was No Fundamental Error**

 ¶ 38 Although Lucero did not invite the error, he waived any objection to it, thus forfeiting appellate review unless the error was fundamental. *Henderson,* 210 Ariz. at 567, ¶ 19, 115 P.3d at 607. To overturn his

---

at 1190, the facts in *Islas* fall within the rule for invited error we establish. In *Islas,* the court asked defense counsel what crimes a witness had been convicted of in relation to a motion in limine to limit use of those convictions for impeachment. Defense counsel erroneously stated he thought they were armed robbery and kidnapping and the court denied the motion in balancing the probative value against any prejudice. *Id.* at 591–92, 647 P.2d at 1189–91. The witness

testified the crimes were theft, robbery and fraudulent schemes and on appeal appellant contended his factual misstatement entitled him to relief for an abuse of discretion by the trial court. *Id.* at 592, 647 P.2d at 1190. The facts in this case do not involve a factual misstatement by Caban which led the court into error, but an error proposed by the court and the State in which Caban's counsel merely acquiesced.

conviction on appeal, Lucero bears the burden of persuading the Court that the right violated by the error "go[es] to the foundation of the case" and that he has suffered prejudice. *Id.* at 567–68, ¶ 20, 115 P.3d at 607–08.

¶ 39 Lucero is not entitled to relief under the fundamental error standard because the record shows that Lucero suffered no prejudice. The confession Lucero made to V. was cumulative and almost identical to the confession he made to his wife. *See Fulminante,* 161 Ariz. at 244–45, 778 P.2d at 609–10 (holding that the admission of involuntary confession is harmless beyond a reasonable doubt when it is cumulative to an admissible confession); *State v. Lopez,* 217 Ariz. 433, 436 n. 2, ¶ 12, 175 P.3d 682, 685 n. 2 (App.2008) (admission of inadmissible hearsay harmless when cumulative with defendant's own testimony). The confession V. proffered described two specific incidents of sexual misconduct including Lucero rubbing his penis between J's buttocks and placing it in her mouth on another occasion. The jury heard Lucero confess the same acts to his wife on a taped confrontation call, albeit the confrontation call confession was not as clearly expressed. Because the confessions were cumulative and the tape of the confrontation call was sufficient to support the verdict, the instruction regarding the confession to V. was not prejudicial and Lucero is not entitled to relief.

## CONCLUSION

¶ 40 For the forgoing reasons we affirm Lucero's convictions and sentences.

CONCURRING: PATRICIA A. OROZCO, Judge.

HALL, Presiding Judge, specially concurring.

¶ 41 As observed by the majority, Arizona courts have not developed an explicit test to distinguish between error that is "invited" for which fundamental error review is unavailable and error that is forfeited because not objected to, which may be reviewed for fundamental error. Thus, it is unclear as to what degree a defendant must contribute to

a ruling by the trial court before the invited error doctrine precludes any review of the ruling on appeal. *Compare State v. Logan,* 200 Ariz. 564, 565–66, ¶ 9, 30 P.3d 631, 632–33 (2001) (finding invited error when defendant requested improper instruction because the party "urging" the error should not be permitted to benefit from it on appeal), *with State v. Pandeli,* 215 Ariz. 514, 528, ¶ 50, 161 P.3d 557, 571 (2007) (finding invited error when defendant, questioned by the court whether he objected to proposed testimony by state's witness, stated that he did not). *Logan* involved a classic example of invited error: the defendant affirmatively caused or "injected" the error by requesting the instruction about which he later complained on appeal. In *Pandeli,* on the other hand, the defendant did not inject the error; rather, he acquiesced in the admission of damaging testimony. Relying primarily on *Logan,* the majority asserts that an error is invited only when a party takes "independent affirmative unequivocal action to initiate the error" and does not occur when a party "merely fail[s] to object to the error or merely acquiesce[s] in it." *Supra* ¶ 21.

¶ 42 I think the majority's focus is misplaced. Instead, I would begin by recognizing that the doctrine of invited error (referred to by some courts as "induced" error) is based on the principles that underlie estoppel, not waiver. *See Norgart v. Upjohn Co.,* 21 Cal.4th 383, 87 Cal.Rptr.2d 453, 981 P.2d 79, 92 (1999) (stating that invited error doctrine is application of the estoppel principle); *C.T. v. Marion County Dept. of Child Services,* 896 N.E.2d 571, 588 (Ind.App.2008) (same); *Prystash v. State,* 3 S.W.3d 522, 531 (Tex.Crim.App.1999) (same, distinguishing waiver of error); *see also Thomson v. Olsen,* 147 Idaho 99, 205 P.3d 1235, 1242–43 (2009) (explaining that doctrine of invited error "applies to estop a party from asserting error when his own conduct induces the commission of the error") (citation omitted). Estoppel is based on the equitable concept that a person "ought not to be allowed to assert a position inconsistent with his former acts to the prejudice of others who have relied thereon." *City of Tucson v. Koerber,* 82 Ariz. 347, 356–57, 313 P.2d 411, 418 (1957); *see also City of Glendale v. Coquat,* 46 Ariz.

478, 481–83, 52 P.2d 1178, 1180 (1935) (explaining differences between waiver and estoppel). Unlike the approach espoused by the majority, which categorically limits invited error only to those instances in which the defendant was the sole cause of the claimed error, an estoppel-based approach requires an appellate court to carefully examine the facts and circumstances of each case in deciding whether the defendant should be estopped from receiving the benefit of fundamental error review.

¶ 43 Viewing Lucero's action through an estoppel lens, I reach a different conclusion than does the majority regarding the applicability of the invited error doctrine. Lucero did more than simply not object to the court's proposed instruction, he endorsed it. When the prosecutor suggested that the question whether the military investigator was a law enforcement official for voluntariness analysis might be a factual issue that should be submitted to the jury for its determination, defense counsel responded: "Yeah. I think because the fact he was in the military kind of clouds it." Immediately after this response, the court informed counsel: "Right. All Right. My response to this question . . . is 'You have heard the facts of the case. It is up to you to make this determination. Judge Kemp.' Any objection to that?" Defense counsel said: "No, that sounds right."

¶ 44 As this exchange shows, defense counsel actively participated in the discussion and fully agreed with the court's response. Although this situation does not present as clear a case of invited error as *Logan,* Lucero nonetheless led the court and prosecutor to believe that he thought the instruction was "right"; in other words, that he would not assert it as error on appeal. Under these circumstances, Lucero should be estopped by the invited error doctrine from having any claim of error reviewed on appeal. *See Pandeli,* 215 Ariz. at 529, ¶ 50, 161 P.3d at 571; *see also State v. Escobedo,* 222 Ariz. 252, 266, ¶ 50, 213 P.3d 689, 703 (App.2009) (holding that defendant entitled to a twelve-person jury who stipulated to an eight-person jury invited the error); *State v. Islas,* 132 Ariz. 590, 592, 647 P.2d 1188, 1190 (App.

1982) ("Generally, a party who participates in or contributes to an error cannot complain of it.").

¶ 45 Cases from other jurisdictions support my view that a party who participates in or contributes to the error of which he complains on appeal is barred from having that claim reviewed. For example, in *State v. Coleman,* 114 Conn.App. 722, 971 A.2d 46, 51–53 (2009), the court found that defendant "induced" any error when he encouraged the court to respond to jury questions by rereading the portion of the charge to which he now objected on appeal. Likewise, in *State v. Kammeyer,* 226 Or.App. 210, 203 P.3d 274, 276 (2009), the court declined to review the trial court's restitution order for plain error because defendant was "actively instrumental" in causing any error by stating he was "okay" with restitution for dismissed counts and rejected defendant's claim that the invited error doctrine was inapplicable because he did not "urge" or "advise" the court to impose restitution. Similarly, in *People v. Sanchez,* 388 Ill.App.3d 467, 328 Ill.Dec. 400, 904 N.E.2d 162, 169–70 (2009), the court declined to review the defendant's claim that the trial court erred by failing to provide clarification on terms contained in the jury instructions because he acquiesced in the trial court's answer to the jury's question. *See also State v. Momah,* 167 Wash.2d 140, 217 P.3d 321, 328 (2009) ("In determining whether the invited error doctrine was applicable, courts have also considered whether a defendant affirmatively assented to the error, materially contributed to it, or benefited from it."); *State v. Clay,* 291 Mont. 147, 967 P.2d 370, 374, ¶ 24 (1998) ("Nor will we put a trial court in error for a ruling or procedure in which a party acquiesced or participated."). The principle common to these cases is that a defendant should not be permitted to take one position before the trial court and then ambush the state and the trial court on appeal by asserting an inconsistent position.

¶ 46 To summarize, I believe that any error in the trial court's response to the jury question was invited or induced by Lucero. Accordingly, I would hold that the claim is unreviewable and affirm Lucero's convictions

without considering whether fundamental error occurred.