NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

KENNETH CHAVEZ, *Appellant*.

No. 1 CA-CR 13-0913
FILED 2-5-2015

Appeal from the Superior Court in Mohave County
No. S8015CR201200846
The Honorable Derek C. Carlisle, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

———————————————

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the court, in which Judge Kenton D. Jones and Judge Michael J. Brown joined.

———————————————

**S W A N N,** Judge:

**¶1**　　　Kenneth Chavez appeals his convictions and sentences for possession of between two and four pounds of marijuana for sale, possession of narcotic drugs (cannabis), and two counts of possession of drug paraphernalia. For the reasons that follow, we find no reversible error and affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　Police responding to a domestic violence call discovered 3.8 pounds of usable marijuana and 24.6 grams of cannabis in Chavez's house. Police also discovered a dozen marijuana plants growing in the garage. In a bathroom, police found a scale, baggies, and tools to break the marijuana down and process it.

**¶3**　　　Chavez had a valid medical marijuana card, but his card stated that he was not authorized to cultivate marijuana. Chavez told police that he believed he was allowed to grow marijuana, that he had been growing marijuana for about ten months, and that he had made six harvests, each time obtaining two to four ounces per plant. Chavez told the officers that he had "donated" excess marijuana to other medical cardholders. He used air quotes when he said donated and admitted that he had received things in exchange for the marijuana.

**¶4**　　　At trial, Chavez denied giving or selling marijuana to another cardholder, but admitted on cross-examination that people gave him things in exchange for marijuana, but "it was not money."

**¶5**　　　The jury was instructed on the presumptions and immunity afforded cardholders under the Arizona Medical Marijuana Act for possession of two and one-half ounces or less of marijuana (or, if the card states the holder is authorized to cultivate, 12 plants), and for giving a cardholder marijuana if nothing of value is transferred in return and the provider does not knowingly cause the recipient to possess more than the allowable amount. *See* A.R.S. § 36-2811(A)(1); A.R.S. § 36-2801(1)(a)(i)-(ii);

2

A.R.S. § 36-2811(B)(1) and (3).

¶6          The jury convicted Chavez of the charged offenses and the superior court imposed mitigated, concurrent sentences, the longest of which was 2.5 years in prison.   Chavez timely appeals.

**DISCUSSION**

I.     Denial of Mistrial

¶7          Chavez argues that the trial court abused its discretion when it denied his motion for a mistrial after a detective volunteered testimony that a confidential informant told another officer that Chavez "was indeed selling marijuana."

¶8          The testimony was prompted by the last in a series of questions by defense counsel as to whether Chavez had been under any investigation by the drug task force prior to his arrest:

> Q:  And did you ever have any contact with Kenny Chavez while working with MAGNET?[1]
>
> A:  No, not prior to that day.
>
> Q:  Were you aware of any investigations involving Mr. Chavez prior to February 5th --
>
> A:  No.
>
> Q:  -- 2012?  And you share information with other agencies, as part of MAGNET, you share information with other agencies, correct, like sheriff's office and Kingman Police Department?
>
> A:  Correct.
>
> Q:  Okay.  And to your knowledge, was Kenneth under any investigation by any other law enforcement agency?
>
> A:  Prior to?

---

[1]      MAGNET is the acronym for the Mohave Area General Narcotics Enforcement Team.

Q: Prior to February 5, 2012.

A: Not prior to.

Q: And he was not under investigation by MAGNET?

A: No, sir, not at that time.

Q: And were you aware of any reports of traffic coming and going from the residence at all hours of the day and night?

A: Not prior to, no.

Q: You keep saying prior to. Is there any new information since --

A: Well, after the February 12th incident, I did have information from a GITTIM officer who was utilizing a confidential informant [who] had given information that Mr. Chavez was indeed selling marijuana, although no buys, no search warrants or anything since that point.

That was information that was given to a gang officer that Mr. Chavez was indeed selling.

Q: And do you know who, the name of that CI was?

A: I wouldn't give it.

The court initially denied defense counsel's request to strike the testimony, reasoning, "You asked him the question, which seemed like a fairly dangerous question to ask if you didn't know the answer to it." The prosecutor also avowed that he had not known this information before hearing the detective's testimony.

¶9        The next day, the court denied defense counsel's oral motion for a mistrial, but offered to instruct the jury that it should not consider the testimony. Defense counsel, however, withdrew his request to strike the testimony and the prosecutor agreed not to mention the detective's testimony in closing argument. Chavez now argues that the admission of this testimony denied him a fair trial because the state's use of a confidential informant had not been disclosed as required by Ariz. R. Crim. P. 15.1(b), and the danger of unfair prejudice substantially outweighed any probative value under Ariz. R. Evid. 403.

**¶10**        As an initial matter, we find that Chavez's claim is precluded by the invited error doctrine, which prevents a party who causes an error from profiting from it on appeal. *State v. Lucero*, 223 Ariz. 129, 135, ¶ 17, 220 P.3d 249, 255 (App. 2009). A party "invites prejudicial testimony by being the first party to elicit the testimony." *Lucero*, 223 Ariz. at 136, ¶ 20, 220 P.3d at 256. *See also State v. Fish*, 109 Ariz. 219, 220, 508 P.2d 49, 50 (1973) ("The defense cannot complain when the objectionable material was actually introduced by the defense."). When defense counsel asks a question to which the witness's answer is clearly responsive, defense counsel invites the error when the response would otherwise be inadmissible. *State v. Maggard*, 104 Ariz. 462, 465, 455 P.2d 259, 262 (1969). *See also State v. Lawrence*, 123 Ariz. 301, 304-05, 599 P.2d 754, 757-58 (1979) (affirming denial of mistrial, reasoning, "[I]t is evident that defense counsel invited error by venturing onto dangerous ground and carelessly framing a question" that invited the witness to testify on an inadmissible matter). In this case, the witness's answer was clearly responsive to defense counsel's direct question, and accordingly defense counsel invited any error.

**¶11**        However, even assuming that defense counsel did not invite the error, we conclude the trial court did not abuse its discretion when it denied his request for a mistrial. "A declaration of mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson,* 136 Ariz. 250, 262, 665 P.2d 972, 984 (1983). "We will only reverse a trial court's decision denying a mistrial when it has clearly abused its discretion." *State v. Bailey*, 160 Ariz. 277, 279, 772 P.2d 1130, 1132 (1989). *See also State v. Jones,* 197 Ariz. 290, 304, ¶¶ 32, 34, 4 P.3d 345, 359 (2000) (holding that trial court did not abuse its discretion in denying mistrial for a witness's "relatively vague references to other unproven crimes and incarcerations").

**¶12**        "When a witness unexpectedly volunteers an inadmissible statement, the action called for rests largely within the discretion of the trial court which must evaluate the situation and decide if some remedy short of mistrial will cure the error." *Adamson*, 136 Ariz. at 262, 665 P.2d at 984. We give deference to the trial court's ruling because it is in the best position to evaluate "the atmosphere of the trial, the manner in which the objectionable statement was made, and the possible effect it had on the jury and the trial." *State v. Bible*, 175 Ariz. 549, 598, 858 P.2d 1152, 1201 (1993). We cannot say that the trial court abused its discretion when it denied the motion for mistrial in light of the fact that it was defense counsel who elicited the testimony, and that the testimony itself was a brief, relatively

vague reference to unsubstantiated information from a person of unknown credibility.

II.      Denial of Motion to Suppress

¶13      Chavez also argues that the trial court erred when it denied his motion to suppress the statements he made to police in the absence of any *Miranda*[2] warnings.

¶14      In reviewing the denial of a motion to suppress, we restrict our review to consideration of the evidence presented at the suppression hearing, *State v. Blackmore*, 186 Ariz. 630, 631, 925 P.2d 1347, 1348 (1996), viewed in the light most favorable to sustaining the superior court's ruling. *State v. Hyde*, 186 Ariz. 252, 265, 921 P.2d 655, 668 (App. 1996). We give deference to the court's factual findings, but review de novo the court's ultimate legal conclusion. *State v. Gonzalez–Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996).

¶15      At the suppression hearing, a deputy sheriff testified that he entered Chavez's residence with the permission of Chavez's girlfriend. The deputy observed a broken water bong, marijuana, and items used for cultivating marijuana. The deputy smelled marijuana around the garage; he also saw an irrigation hose going underneath the garage door and heard a motor running inside. Chavez's girlfriend told the deputy that Chavez had a medical marijuana card and that she believed Chavez was growing marijuana in the garage.

¶16      When Chavez returned to the residence about an hour later, the deputy told him he wanted to talk to him about the alleged domestic violence situation and the marijuana. While the deputy was looking over his notes, Chavez volunteered that he had a medical marijuana card, and that he believed he was allowed to grow it, based on conversations with the state health department and because there was no dispensary within 25 miles of his residence. He told the deputy that he had obtained six harvests from his plants.

¶17      Chavez offered to show the deputy the growing operation in his garage. On viewing the marijuana plants, the deputy asked Chavez how much it cost to run the growing operation, and Chavez told him he had spent about $2,000 since he had started. The deputy asked Chavez if he was employed, and Chavez said he was not.

---

[2]      *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶18        Once they exited the garage, the deputy informed Chavez "that we were going to contact the detectives with MAGNET, and we would just wait [ ] till they responded." Chavez sat on the front porch for the one or two hours it took for the detectives to arrive, although the deputy had not told him that he had to wait. During the wait, Chavez did not seem upset, and volunteered a story about being stopped by a highway patrolman when he was traveling to Pinetop with a small amount of marijuana.

¶19        When the detective from MAGNET arrived, Chavez agreed to show him the growing operation and around the seven acres of property, and responded to questions about the marijuana-growing operation. When the detective asked him if he was selling marijuana, Chavez told the detective that he "donated" excess marijuana. Chavez was "very helpful and cooperative" the entire time. Chavez was arrested and handcuffed only after he returned from the walk around the property.

¶20        *Miranda's* procedural safeguards apply only "where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). An individual is considered in custody for purposes of *Miranda* if, in light of all the circumstances, "A 'reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave.'" *Howes v. Fields*, 132 S.Ct. 1181, 1189 (2012). Relevant factors in determining whether a suspect is in custody include: "1) the site of the interrogation; 2) whether the investigation has focused on the accused; 3) whether the objective indicia of arrest are present; and 4) the length and form of the interrogation." *State v. Perea*, 142 Ariz. 352, 355, 690 P.2d 71, 74 (1984).

¶21        On this record, the court correctly concluded that Chavez was not in custody at the time he made the statements at issue, and accordingly the statements were admissible notwithstanding the absence of *Miranda* warnings. The court found that Chavez was not in custody because the questioning occurred at his residence, in the absence of any objective indicia of arrest such as handcuffs, advice that he was under arrest, or directive that he was not permitted to leave. The court also noted that "[Chavez's] conduct in voluntarily showing deputies the garage and walking them around the property was consistent with someone who was not under arrest." We agree that a reasonable person in Chavez's position would not have considered himself in custody under these circumstances.

## CONCLUSION

**¶22**		For the foregoing reasons, we affirm Chavez's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama